UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DEMETRIS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO,<br><br>    Defendant. | Case No. 13-cv-05566-VC<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST INTERNAL UNION REMEDIES; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 47 |

Exhaustion

TWU's motion for summary judgment for failure to exhaust internal union remedies is denied. First, the union argues that the plaintiffs should have invoked the appeal procedures set forth in the TWU Constitution after the Equity Distribution Appeals Committee denied their claims for a share of the equity. Article XXIII of the TWU Constitution states that any aggrieved member must appeal a union decision to both the International Executive Council and the International Convention before filing suit, unless the constitution itself specifies an alternative means for challenging the union's decision. TWU argues that because the process of filing claims with the Equity Distribution Appeals Committee was not actually set forth in the TWU Constitution, the plaintiffs were required to exhaust the constitutional appeal procedures. But the union had sent a letter to its members (including people, like the plaintiffs, who were being denied an equity share altogether) that can only be interpreted as a directive that members *could not* avail themselves of the constitutional appeal process. The letter: (i) instructed members who disputed the "determination" regarding their "eligibility" for equity to submit a claim form to the Appeals Committee; and (ii) stated that a decision of the Appeals Committee was "final and binding, unless

a court with proper jurisdiction" reversed it. Docket No. 47-2. Given this language, the plaintiffs are excused from any failure to resort to the constitutional appeal process after receiving denials from the Appeals Committee. Although an isolated misleading comment by a union official about exhaustion requirements might in some circumstances be insufficient to excuse those requirements, *see*, *e.g.*, *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1108 (6th Cir. 1989), that is a far cry from an official letter, sent by the union itself, that would lead any reasonable member to conclude that any appeal should be to the Appeals Committee, and that any decision of the Appeals Committee would be final, subject to reversal only by a court.

Second, the union argues that at a minimum the doctrine of exhaustion should apply to any TWU member who did not file a claim with the Appeals Committee. But the plaintiffs have presented evidence that this would have been futile. Even though the letter from TWU to its members created the impression that the Appeals Committee could revisit the fundamental decision to exclude workers who had taken early separation and that its decision on that point would be final, there is strong evidence that internally TWU took a far narrower view of the Appeals Committee's function, namely, that it was merely to correct potential errors in the Equity Distribution Committee's calculation of any member's individual share. For example, a memorandum from the Appeals Committee to the Equity Distribution Committee stated that claims from people who took early separation would be denied simply because the equity distribution plan excluded them, which suggests the Appeals Committee believed any decision about the validity of the plan (or at least that aspect of the plan) was beyond its charge. Docket No. 61-4. And the union's Rule 30(b)(6) witness affirmed that the Appeals Committee's task "was to determine if the finding or eligibility determination with respect to that individual was correct as opposed to they didn't have the authority to decide for this individual we're going to deviate from the plan of distribution." Docket No. 61-2 at 39. Although later in the deposition counsel for TWU attempted to rehabilitate the witness on this point, that testimony did not go very well for the union. If anything, it constitutes further evidence that TWU believed the Appeals Committee could not overturn the fundamental decision of the Equity Distribution Committee to exclude separated workers from an equity share. Docket No. 66-1 at 168-69.

Motion to Dismiss

The motion to dismiss is granted with leave to amend.

A union cannot be found to violate its duty of fair representation unless its conduct in representing its members was arbitrary, discriminatory, or in bad faith. *See*, *e.g.*, *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 75-76 (1991); *Vaughn v. Air Line Pilots Ass'n*, 604 F.3d 703, 709 (2d Cir. 2010). Therefore, on a motion to dismiss, the question is whether the complaint alleges facts sufficient to make it "plausible" that the union's conduct was arbitrary, discriminatory or in bad faith. *Vaughn*, 604 F.3d at 709.

The first amended complaint alleges TWU violated its duty of fair representation in two ways. First, it alleges TWU acted arbitrarily or in bad faith when it failed to inform members, before they took early separation, that doing so would preclude them from receiving an equity share. But the complaint contains no allegation that would support a conclusion that, at the time members were signing up for early separation, TWU's decisionmakers had formed an intent to exclude those people from the equity distribution. Absent specific factual allegations on this point, there is no plausible claim that TWU violated its duty of fair representation by failing to disclose that early separation would disqualify members from receiving a share of the equity.

Second, the plaintiffs argue that the Equity Distribution Committee's subsequent decision to exclude early separation participants from a share of the equity was itself a breach of the duty of fair representation. There can be little doubt that the union was justified in treating separated workers differently from those who remained at the airline when it distributed the 4.8 percent equity, because the two groups suffered differently under the concessions TWU gave during the bankruptcy proceedings. On the other hand, the union's assertion that the concessions given in exchange for the equity were purely "prospective" is dubious on its face, and is contradicted by plausible allegations in the complaint, including but not limited to the allegation that the workers relinquished their retiree health benefits as part of the deal. The question for purposes of the motion to dismiss, therefore, is whether it is plausible that the union breached its duty by giving separated workers nothing at all, as opposed to some smaller portion of the equity.

The allegations in the first amended complaint are too conclusory to support a claim that

3

the union's decision to deny separated workers any portion of the equity share was arbitrary, discriminatory or in bad faith. This is primarily because the complaint does not permit the Court to assess the degree to which the separated workers were situated differently from the remaining workers with respect to the concessions for the equity share. The following are examples of the complaint's deficiencies in this regard:

- The complaint alleges in passing that the separated workers suffered as a result of the agreement to freeze pension benefits, but leaves the reader to speculate how and to what degree this was the case.
- The complaint alleges that the separated workers suffered as a result of the "scope of work" concessions, but it does not meaningfully explain how those concessions affected the separated workers.
- At the hearing, the plaintiffs noted that the equity distribution plan indicates that the union distributed the portion of equity attributable to the "scope of work" concessions based on seniority, which suggests the distribution was made in light of work previously performed and therefore cuts against the idea that separated workers did not have a stake in the equity. But the plaintiffs did not discuss this in the amended complaint. And while the parties agree the equity distribution plan is incorporated by reference into the complaint, the plan only mentions seniority in passing and does not, on its own, allow the reader to understand the significance of the role seniority played.
- Also at the hearing, the plaintiffs argued that TWU at least implied to its members, in urging them to ratify the new deal, that the equity would be for everyone, meaning that the Equity Distribution Committee denied people who took early separation something they had at least implicitly been promised. But the complaint itself includes no allegation to this effect, nor does it incorporate by reference any documents that speak to that question.
- The complaint makes passing reference to a relationship between the portion of the equity attributable to the "Me, Too" agreements and the willingness of employees

4

to take early separation, but it does not explain that relationship in any detail.

- The complaint makes passing reference to claims made by TWU in the bankruptcy proceedings and implies a relationship between the claims and the equity share received as part of the new deal, but provides no explanation on that point or how it relates to TWU's alleged breach of the duty of fair representation.
- The complaint repeatedly asserts that all people who were TWU members at the time the new collective bargaining agreement was ratified had "vested rights" in the 4.8 percent equity share, but does not explain what it means, in this context, for rights to be "vested."
- Even with respect to the alleged decision to relinquish retiree health benefits in exchange for the equity, the complaint does not allege even roughly how much these benefits were worth, nor does it discuss the significance of this concession in relation to the others.

Without more detailed allegations about these matters, it is impossible to assess just how unfairly (assuming the truth of the allegations) the separated workers were treated, and therefore it is impossible to assess whether the union's decision crossed the line from unfair to arbitrary. And without sufficient detail about the degree to which the separated workers were adversely affected by the concessions and the magnitude of the difference in the treatment they received, the additional allegations going to arbitrariness and bad faith are insufficient to support a claim for a violation of the duty of fair representation. For example, the amended complaint describes an email from the union's former president stating he did not understand the logic behind excluding the separated workers and felt it was based on greed. Although this could certainly contribute to a plausible claim for breach of the duty of fair representation, it is insufficient without adequate details about the separated workers' alleged stake in the equity and the magnitude of their differential treatment in its distribution. The same is true of the allegations about the union's improper motive in denying the separated workers equity, namely, that the union wished to curry favor with remaining members who were going to be voting on whether to retain TWU as their collective bargaining representative. These allegations of improper motive are not detailed or

specific enough to state a claim for discrimination or bad faith on their own, so without a better explanation about the degree of unfairness to which the separated workers were subjected (or at least without additional factual allegations with respect to TWU's allegedly improper motives), they do not cause the amended complaint's allegations of a breach of the duty of fair representation to rise to the level of plausibility.

Accordingly, the amended complaint is dismissed. The plaintiffs are given one more opportunity to amend the complaint to state a claim for a breach of the duty of fair representation, both with respect to TWU's alleged failure to disclose the consequences of taking early separation and with respect to the decision itself to exclude plaintiffs from any share of the equity. If the plaintiffs elect to file a second amended complaint, they must do so within 21 days of the date of this order.

Meanwhile, the Court wishes to advise the parties on two matters. First, in connection with this motion to dismiss, the parties did not make clear: (i) which documents were incorporated by reference into the complaint; (ii) which documents were subject to judicial notice; and (iii) for any documents subject to judicial notice, the purpose for which they may be considered. To facilitate consideration of any future motion to dismiss, any documents the plaintiffs believe are incorporated by reference in the second amended complaint should be attached as exhibits to that complaint. And all documents a party believes are subject to judicial notice should be attached as exhibits to a request for judicial notice, with the request containing an explanation of why each document is subject to judicial notice and of the purpose for which the document may be considered. Second, TWU placed great emphasis in its papers and at the hearing on the rule that a union may not be deemed to have acted "arbitrarily" unless its conduct fell "so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67. The union (and most of the cases cited by the union) focused heavily on the need not to disrupt the collective bargaining process. But in this case the plaintiffs do not appear to allege that TWU violated its duty of fair representation to its members when negotiating a new collective bargaining agreement with American. Instead, the plaintiffs appear to allege that the union breached its duty when it later excluded separated workers from any share of one of the fruits of that agreement. The parties

6

should consider whether the same standard of "arbitrariness" applies in this context.

**IT IS SO ORDERED**.

Dated:  September 29, 2014

_____
VINCE CHHABRIA
United States District Judge